OPINION. Tyson, Judge: Petitioner’s assignments of error do not specify the character of the deductions sought and on brief he fails to cite the sections of the Internal Revenue Code on which he relies in support thereof. However, upon consideration of the general allegations in the petition, the testimony, and the briefs in this proceeding, we conclude that the issues are as hereinbefore set out. Petitioner’s primary contention is that the sums he deposited in the escrow fund and which were credited to his account by the escrow agents, in the amounts of $13,755.66 in 1943, $11,788.82 in 1944, and $4,141.64 in 1945, constituted expense payments in the ordinary course of his business made to the manufacturer for processing wool waste material into spun yarn, and thus were proper deductions from gross income for each year, respectively. As to this contention, it is unnecessary to do more than point out the plain and unambiguous terms of the agreement and what was done by petitioner in connection therewith. Those terms, as set out in our findings, provided, inter alia, that the amounts deposited by petitioner in escrow were to be paid to Redstone (Hartford’s successor as a party to the agreement) and petitioner was to be credited on bills rendered by Redstone for processing during the postwar period only. Such postwar processing was not to begin until on approximately February 12, 1947, the date fixed by Redstone in accordance with its right to do so under a provision of the agreement, and no such postwar processing was done for petitioner by Redstone. It is thus apparent that there is no merit in this contention of petitioner. Petitioner makes the alternative contention that the total of his escrow deposits made in 1943, 1944, and 1945, in the amount of $29,-686.12, constituted business expenses incurred in 1945 for the reasons: First, that on or about June, 1945, the provision of the agreement by which he was to furnish Redstone during a postwar period beginning, on February 12,1947 (approximately 18 months after V-J Day), with wool waste material to be processed into spun yarn for petitioner was abandoned by petitioner and Redstone through mutual consent and that thereupon the funds in escrow were forfeited by petitioner to Redstone; and, second, that, if not so abandoned, there was a breach on or about June, 1945, by the petitioner himself of that provision and that the funds of petitioner in escrow were thereby forfeited to Redstone. As regards the reasons upon which petitioner’s alternative contention is based, there was-a conversation between petitioner and two of Redstone’s officers in April, May, or June of 1945 in which petitioner requested lower prices for the processing by Redstone of materials furnished it by petitioner, and the two officers would not agree to comply with that request because the O. P. A. prices obtaining at that time would not permit. Petitioner testified that after that conversation he decided that he “couldn’t stand” the payment of the 6 cents per pound into escrow “any more” aiid “so I broke it off” and that thereafter he gave no new business to Redstone, since he considered the agreement as terminated. Petitioner did not testify that Redstone agreed to his decision or that it was informed thereof and there is nothing in the record to indicate that such was the case. To the contrary, the president of Redstone testified that there was nothing said in the conversation to indicate that petitioner was ceasing to do business under its contract with Redstone and that no communication, oral or otherwise, ever was received by Redstone from petitioner to that effect until receipt of the letter of petitioner of April 1, 1946. It thus is obvious that the agreement was not mutually abandoned in 1945. We think it equally obvious from the testimony referred to just above that the petitioner did not in 1945 breach his obligation to deliver, in the postwar period which began on February 12, 1947, material for processing by Redstone. According to his own testimony he merely ceased to deliver materials prior to the postwar period because he decided he could not stand the payment of the 6 cents per pound into escrow required for the manufacture of such material during that period and considered that decision as breaching the entire agreement. Under the agreement petitioner was not obligated to deliver material for processing prior to the postwar period; so, when lie decided to and did cease to deliver materials for processing during that period, not even a breach of the provision of the agreement relating to that period occurred; and it necessarily follows that no breach of the provision of the agreement relating to the postwar period occurred. We disagree with the alternative contention of petitioner. We hold that the agreement involved was terminated and the petitioner’s $29,686.12 escrow deposit was forfeited not earlier than in April, 1946, and, accordingly, that such amount did not constitute business expenses incurred in 1945 and is not deductible as such, or otherwise, in that year. The respondent’s determination is approved. Decision will be entered for the respondent.